1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10    MAURICIO SOSA,                          )    Civil No. 10cv0280 JAH (BLM)
                                              )
11                        Plaintiff,          )    **ORDER DENYING DEFENDANTS'**
      v.                                      )    **MOTION FOR SUMMARY**
12                                            )    **JUDGMENT AND DENYING**
      SCOTT PFEIFFER, et. al.,                )    **PLAINTIFF'S MOTION TO**
13                                            )    **STRIKE [Doc. Nos. 99, 111]**
                          Defendants.         )
14    _____        )

15                               **INTRODUCTION**

16         Plaintiff, Mauricio Sosa, originally filed a complaint on February 4, 2010, and an

17    amended complaint on May 24, 2010, for Jones Act negligence, unseaworthiness,

18    maintenance and cure, unpaid wages, fraud, interference with prospective advantage,

19    defamation, and intentional and negligent infliction of emotional distress.  Plaintiff named

20    M/Y Nice Try, Scott Pfeiffer, On the Edge, LLC[1], Sonora West Development, Inc.

21    ("SWD") and Does 1 through 20 inclusive as defendants.  Upon Plaintiff's motion, the

22    Court issued a warrant of arrest and attachment of the defendant vessel.

23         On June 21, 2010, Defendants filed a motion for a hearing seeking an order

24    vacating the attachment and arrest of the vessel.  After conferring with the parties at the

25    hearing, the Court denied the motion to vacate the attachment and arrest without

26    prejudice, directed the parties to address the issue of an adequate amount and form of

27    security for Defendants to post for the release of the vessel, and granted the parties'

28    _____

              [1]On the Edge is now known, and referred to by the parties, as Nice Try, LLC.

motion to consolidate the action with <u>Hernandez Robles v. M/Y Nice Try</u>, 10cv1195.[2] After reaching an agreement as to an appropriate bond, the parties jointly sought an order for the release of the vessel which the Court granted by order filed June 25, 2010.  Plaintiff Sosa added CCBill, LLC as a defendant.

On July 16, 2010, Defendants filed separate answers to the separate complaints of the consolidated action.  On April 4, 2011, Plaintiffs sought leave to file amended complaints which Defendants opposed.  The Court granted the motion and Plaintiffs filed amended complaints on June 9, 2011.

Plaintiff sought Clerk's entry of default against the defendants on January 19, 2012. The Clerk did not enter default.  Defendant filed an answer to the complaint on January 23, 2012, and an objection to the request for default based upon the fact they filed a motion to dismiss the complaint on June 29, 2011, and the hearing on the motion was continued upon Plaintiff's request, the motion to dismiss was later withdrawn without prejudice to being refiled at a later date if necessary, and the parties engaged in settlement negotiations, including mediation.

Defendants filed the pending motion for summary judgment, and filed notices of lodging foreign authorities in support of the motion.  Plaintiff filed an opposition, and a motion to strike a declaration submitted by Defendant in support of its motion.

Defendants filed a response to the motion to strike and a reply in support of their motion for summary judgment.  Plaintiff filed a document entitled "supplemental memorandum of points and authorities in opposition to Defendants' motion for summary judgment and opposition to Defendants' objections to evidence in support of opposition to motion for summary judgment" and a reply in support of his motion to strike. Defendants filed an objection to Plaintiff's "surreply" and reply in support of their objections.  Plaintiff filed a response to the objection.  The parties appeared before this Court for a hearing on the motion for summary judgment and motion to strike, after

---

[2]This complaint was dismissed with prejudice upon the parties' joint motion pursuant to a settlement.

which the Court took the matter under submission.

**DISCUSSION**

**I.  Preliminary Issues**

**A.  Plaintiff's Motion to Strike**

Plaintiff seeks any order striking the declaration of defense expert David Lopez filed in support of the Defendants' motion for summary judgment.  Plaintiff argues Mr. Lopez was never disclosed as a witness as required under Rule 26(a)(1)(A)(i), was never the subject of any timely expert designation, and never provided an expert report as required by Rule 26(b)(2)(B).

Defendants maintain they designated Lopez as an expert on November 30, 2011. They argue his testimony only concerns issues of foreign law so Rule 26 does not require them to disclose either his identity or his report, and sanctions is inappropriate.  They further argue Plaintiff failed to give notice of the motion to strike and failed to meet and confer as required.  Even if Rule 26 applies, Defendants argue, the designation is timely.

Under Rule 37(c)(1), a party who fails to provide information as required by Rule 26(a) is not permitted to use the information in support of a motion unless "the failure was substantially justified or is harmless."  Pursuant to Rule 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  The disclosure must include a written report.  FED.R.CIV.P. 26(a)(2)(B).

Defendants designated Lopez as an expert witness but failed to provide a report. They argue Rule 26(a)(2) does not apply to Lopez because his declaration concerns Mexican law and procedure and not an issue of fact to be determined by the trier of fact. They maintain the Court may consider the declaration under Rule 44.1, which permits a court to consider "any relevant material or source, including testimony" in determining foreign law.

Plaintiff argues Defendants should be estopped from raising the argument that Mr. Lopez was not required to be designated because he was testifying about Mexican law as

3

Defendants, by their conduct including Lopez in the November 30, 2011 expert designation, admitted that Rule 26 disclosure rules and the requirements of the amended case management order govern the disclosure of Lopez.

In support of their contention they are not required to provide a report, Defendant relies on <u>Lithuanian Commerce Corp. v. Sara Lee Hosiery</u>, 177 F.R.D. 245, 264 (D.N.J. 1997), and <u>Universal Trading & Investment Co. v. Kiritchenko</u>, 2007 WL 2141296 (N.D.Cal. 2007).  In <u>Lithuanian Commerce</u>, the court found the expert's report on foreign law consisted of advisory, hearsay opinions and failed to analyze the applicable foreign law, and, therefore should not be admitted into evidence at trial.  The court however, determined the report could be used by the trial judge under Rule 44.1.  The court provided no opinion as to whether a report is required under Rule 26 but did recognize expert opinions involving foreign law are different than those submitted pursuant to Rule 702.  In <u>Universal Trading</u>, the court held the plain language of Rule 44.1 does not require a report from persons providing testimony to assist a court in making determinations of foreign law.

Plaintiff argues <u>Lithuanian Commerce</u> does not stand for the proposition that reports are not required for experts on foreign law.  He further argues the decision in <u>Universal Trading</u> is distinguishable from the instant case because Lopez did not give a declaration that solely set forth the content of Mexican law but made factual conclusions, applied the facts, described the conditions in foreign country and made conclusions on the ultimate issue in the case that are to be decided by the jury.

Defendants offer the opinion of their expert to assist this Court in determining foreign law when ruling on the motion for summary judgment which is permissible under Rule 44.1.  The opinion is not being offered at trial and therefore, under the plain language of Rule 26(a)(2), is not subject to the disclosure requirement or the report requirement.

However, Rule 44.1 requires the party who intends to raise an issue of foreign law to provide notice "by pleading or other writing" of his intention.  Defendants maintain the

notice they provided when filing their motion for summary judgment is all that is required by Rule 44.1. They further maintain they raised the issue of Mexican Law in June 2, 2010, in their Memorandum of Points and Authorities in Support of their Ex-Parte Application for a Prompt hearing, in their November 30, 2011, Disclosure of Expert Witness Information and on January 23, 2012, in the affirmative defenses of their Answer.

To determine whether a party has given reasonable notice of its intent to invoke foreign law, a court should (1) consider the stage of the case at the time of notice; (2) evaluate the reason proffered by the party for its failure to provide notice earlier; and (3) consider the importance to the case as a whole of the issue of foreign law. See APL Co. Pte. Ltd. v. UK Aerosols Ltd., 582 F.3d 947, 955 - 56 (9th Cir. 2009). Defendants demonstrate they provided notice of their intention to raise the issue of Mexican Law in their Disclosure of Expert Witness Information, prior to discovery cut-off and the expert disclosure deadline. Defendants contend they did not provide notice earlier because they were contesting the validity of the Mexican Labor Court judgment and did not anticipate the need for designating an expert on Mexican law. Defendants' argument on summary judgment that the action is precluded by *res judicata* by the Mexican Labor Court action demonstrates the significance of Mexican law to the matter.

The Court recognizes Plaintiff's concern that he believed Defendants dropped their contention that Mexican Law controlled Plaintiff's claim and their *res judicata* defense when Defendants failed to provide a report from Mr. Lopez, and Plaintiff believed it was unnecessary to use any of its additional law experts, or to obtain Mr. Lopez's file or to cross examine him at a deposition. The purpose of the notice requirement is to "avoid unfairly surprising opposing parties." APL Co. Pte. Ltd., 582 at 955 (citing DP Aviation v. Smiths Indus. Aerospace & Defense Sys. Ltd., 268 F.3d 829 (9th Cir. 2001)). However, Plaintiff was able to address the argument and submit expert testimony on Mexican law in support of his opposition and in his unauthorized surreply to the motion for summary judgment. Therefore, Plaintiff's motion to strike is DENIED.

//

**B. Defendant's Objections**

**1. Evidentiary Objections**

Contained within the 91 pages of Defendants' reply in support of their motion for summary judgment are objections to Plaintiff's evidence submitted in his opposition.

Plaintiff argues Defendants make blanket objections to most of the evidence submitted by Plaintiff, including lack of foundation and hearsay. However, Defendants do not specify exactly what testimony and evidence they believe is hearsay as required by the rules of evidence.

The Court did not rely upon the evidence to which Defendants' object. Therefore, the objections are overruled as moot.

**2. Plaintiff's Surreply**

Defendants object to Plaintiff's unauthorized surreply filed in violation of local and federal rules. Defendant argues the brief was filed without leave of Court as required and after the close of briefing which prejudices Defendants.

Plaintiff argues Defendants waited until the filing of the reply to have Lopez make many of his assertions thereby surprising Plaintiff and prejudicing Plaintiff. Plaintiff maintains his supplemental declaration in support of his surreply could not have been filed earlier because Defendants waited until the reply brief to have their expert provide the remainder of his opinions.

Although Plaintiff failed to obtain leave prior to filing their surreply, this Court finds the surreply responds to new arguments contained in Defendants' reply and is permissible. Defendants' objection to the surreply is OVERRULED.

**3. Plaintiff's Reply in Support of His Motion to Strike**

Defendants object to Plaintiff's reply in support of his motion to strike. Defendants argue it is untimely and is actually a surreply responding to the motion for summary judgment under the guise of a reply filed without leave of court.

Plaintiff argues this is another attempt by Defendants to unfairly prejudice Plaintiff's ability to respond to the motion for summary judgment. He maintains

Defendant waited until the motion to disclose Mr. Lopez's opinions and waited until the reply brief to disclose further opinions. Plaintiff argues that without the benefit of a deposition and expert report, their expert could not fully respond to Mr. Lopez's opinions with preparing a supplemental declaration. He further argues the supplemental declaration is properly before the Court in reply to the motion to strike because it demonstrates Defendants' failure to provide an expert report was not harmless.

The Court finds the reply in support of the motion to strike is not untimely and properly responds to Defendants' opposition. As such, Defendants' objection is OVERRULED.

## II.  Motion for Summary Judgment

Defendants seek summary judgment on all Plaintiff's claims on the grounds they are barred by the principle of comity and the doctrine of *res judicata*, and none of the claims are cognizable under the laws of the United States.

## A.  Legal Standard

Summary judgment is properly granted when "there is no genuine issue as to any material fact and. . .the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Where the party moving for summary judgment does not bear the burden of proof at trial, as here, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

"Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497 U.S. at 885 (quoting Celotex , 477 U.S. at 323).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient.  See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991).  A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(citing Anderson, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when]. . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

**B.  Analysis**

**1.  Whether the Claims are Cognizable**

Defendants argues they are entitled to summary judgment on all Plaintiff's claims because none of the claims are cognizable under United States law.  They maintain all Plaintiff's claims were resolved under the laws of Mexico in the Mexican Labor Court action, and those laws and judgment govern the resolution of this action and require summary judgment in Defendants' favor.  Defendants maintain Mexican law applies to this admiralty action, based upon the Lauritzen-Rhoditis factors.

Plaintiff argues the Jones Act and United States maritime law are applicable to his

claims against Nice Try and the vessel.  As a professional seaman on a vessel, Plaintiff contends he is considered a seaman entitled to Jones Act remedies and remedies under maritime law, and Congress intended the Jones Act to apply to foreign as well as domestic seamen serving on United States flag vessels.  He maintains courts in the Southern District of California and the Central District of California have interpreted <u>Lauritzen</u> and <u>Rhoditis</u> to mean that a vessel owner/operator like Nice Try has to demonstrate that the contacts between the vessel's operations and the United States are minimal, otherwise the Jones Act and the maritime law of the United States must apply to an action in district court for an injury involving foreign seaman.  He argues Nice Try's contacts with the United States are continuous and overwhelming and substantial.

Courts look to the following factors to determine whether the Jones Act is applicable: (a) the place of the wrongful act; (b) the law of the ship's flag; (c) the allegiance or domicile of the injured person; (d) the allegiance of the shipowner; (e) the place of contract; (f) the inaccessibility of the foreign forum; (g) the law of the forum; and (h) the shipowner's base of operations.  <u>Lauritzen v. Larson</u>, 345 U.S. 571, 583 -90 (1953); <u>Hellenic Lines, Ltd v. Rhoditis</u>, 398 U.S. 306, 309 (1970).  The list is not a mechanical one and is not exhaustive.  <u>See</u> <u>Rhoditis</u>, 398 at 308-09.  Other factors may be considered. <u>Id.</u>

**a. Place of the Wrongful Act**

Defendant argues the place of the wrongful act weighs heavily in favor of applying Mexican law because Plaintiff was not engaged in traditional commercial or maritime activities, his work never took him outside Mexico, and the injuries and grievances of which he complains all occurred in Mexico.

Plaintiff maintains his accident occurred over 186 miles from Mexico and outside the territorial waters of Mexico.  He argues the place of the wrongful act or injury in this action is either neutral or favors the application of the Jones Act and United States maritime law because the wrongful act or injury took place aboard a United States flag vessel at the hands of a United States citizen outside the territorial waters of Mexico.

The parties dispute whether the injury took place within Mexico.  While the parties agree the injury to Plaintiff's foot occurred at Alijos Rocks, which is outside Mexico's territorial waters but within its Exclusive Economic Zone ("EZZ"), they dispute whether the location is within Mexican waters.  See Lopez Decl. ¶ 3.2 (Doc. No. 99-6); Maldonado Decl. ¶ 7 (Doc. No. 109).  Defendants argue the injury took place in Mexico's EEZ in which Mexico is sovereign, pursuant to the Mexican Constitution, and therefore was within Mexico.  They further argue the employment-related grievances occurred at a marina in Ensenada, Mexico.  Plaintiff maintains the injury took place outside the territorial waters of Mexico.  He argues the EEZ only grants rights of minerals and fisheries and other living resources, not any right over foreign flag vessels or their crews.  He further argues the Mexican Constitution establishes exclusive jurisdiction over labor matters in the EEZ for companies performing work, not leisure trips as is the case here.  Plaintiff does not address the fact his employment related injuries occurred in Mexico.

Relying on Howard v. Crystal Cruises, 41 F.3d 527 (9th Cir. 1995), Plaintiff argues the waters off the coast of Mexico are the high seas for purposes of maritime law. However, the court in Howard determined the meaning of "high seas" under the Death on the High Seas Act included the territorial waters of a foreign state.  The Court does not find the holding persuasive in its determination on whether an injury that occurred within Mexico's EEZ occurred within Mexican for purposes of the Jones Act.

Considering Mexico's exercise of jurisdiction over events occurring in the EZZ, and the events that occurred in Ensenada, Mexico, the Court finds the events giving rise to Plaintiff's claims occurred within Mexico.

**b. The Law of the Ship's Flag**

Defendants argue the law of the ship's flag should not be accorded great weight in this action because it does not arise from the traditional commercial or maritime activities. They maintain the vessel was a private pleasure craft that engaged in recreational fishing in Mexico and done under permits and/or licenses issued by Mexico.  Defendants further maintain that while the vessel was registered with the U.S. Coast Guard, at all material

10cv280

times, her home-port was in Cabo San Lucas, Mexico.

Plaintiff argues the law of ship's flag compels application of the Jones Act and United States maritime law.  He maintains the vessel routinely sailed in international waters between the United States and Mexico and routinely fished in the territorial waters of California with its home port in Coronado, California.

This action involves a United States flag vessel registered with the United States Coast Guard.  See Lerner Decl. ¶ 8, Defs' Exh. F (Doc. No. 99-5).  Generally, the law of the flag is accorded great weight.  See Lauritzen, 345 U.S. 571 at 585.  As noted by the parties, in Phillips v. Amoco Trinidad Oil Co., 632 F.2d 82 (9th Cir. 1980), which involved a stationary drilling rig in Trinidad territorial waters, the Ninth Circuit determined the law of the flag was entitled to much less weight because the vessel's operations were at a fixed location.  Unlike the ship in Phillips, the Defendant vessel was not moored at a fixed location in Mexico, but routinely moored in California and traveled through and fished in California territorial waters.  See Hernandez Depo. 38:1 - 12; 51:21 - 52:2; 57:22 - 58:23; 61:1 - 62: 4, Pla's Exh. 6 (Doc. No. 107-5); Pfeiffer Depo. 124: 3 - 6, Pla's Exh. 2 (Doc. No. 107-3).  Accordingly, the Court gives this factor great weight.

**c.  The Allegiance or Domicile of the Injured Person**

The allegiance or domicile of the injured is an important factor.  See Pereira v. Utah Transport, Inc., 764 F.2d 686, 689 (9th Cir. 1985).  There is no dispute that Plaintiff is a citizen and domiciliary of Mexico.  As such, the factor weighs in favor of Mexican law.

**d.  The Allegiance of the Shipowner**

Defendants argue this factor is accorded less weight here because the majority of the other factors weigh strongly in favor of the application of Mexican law.

Plaintiff argues other than instances where a United States flag vessel is permanently stationed in the territorial waters of a foreign country and never returns to the United States, there are no reported decisions Plaintiff could find that refuse to grant to a foreign seaman serving on a United States flag vessel owned and operated by a United States shipowner the right to bring claims under the Jones Act or the maritime laws of the

1  United States.

2   Defendant Nice Try, the owner of the vessel, is a limited liability corporation

3  organized under the laws of the State of Arizona.  See Articles of Organization, Defs' Exh.

4  C (Doc. No. 99-5); Bill of Sale, Defs' Exh. D (Doc. No. 99-5).  Nice Try is comprised of

5  two members, Defendants CCBill and SWD, both of which are corporate entities

6  organized under the laws of the State of Arizona.  See id.  Defendant Cadwell, a United

7  States citizen, with a business address in Arizona and residences in Arizona and Coronado,

8  California was the chief executive officer of Nice Try and CCBill.  Cadwell Depo. 4:14 -

9  5:5; 7:7 - 17, Pla's Exh. 1 (Doc. No. 107-2).  Defendant Pfeiffer, a United States Citizen

10  who resides in Scottsdale, Arizona was president of SWD which is located in Phoenix,

11  Arizona.  Pfeiffer Depo. 4:10 - 5:4; 31:25 - 32:10, Pla's Exh. 2 (Doc. No. 107-3).  Brett

12  Brimley, a United States citizen, served as vice president for SWD from 2005 through

13  March 2009.  Id. at 32:15: - 33:6.

14   This factor weighs heavily in support of United States law.

15  **e.  The Place of Contract**

16   Defendants argue this factor is significant and weighs heavily in favor of the

17  application of Mexican law.  They contend Plaintiff's employment engagement was

18  secured in Mexico by the then captain of the vessel, Pedro Hernandez Robles, who is also

19  a Mexican citizen and domiciliary.  They further maintain Plaintiff's work was exclusively

20  in Mexico and he was paid in Mexican pesos.

21   Plaintiff maintains no written contract was entered into and he joined the vessel as

22  a crew member in Cabo San Lucas.  He argues Defendants never intended for Mexican law

23  to apply to his injuries because they failed to pay money into the Mexican social security

24  system to cover any accident suffered by Plaintiff.  Instead, he contends Nice Try paid for

25  insurance coverage that provides coverage for Plaintiff's claims under the Jones Act and

26  maritime law.

27   In reply, Defendants argue Plaintiff's contention overlooks the fact the vessel's

28  home-port under the insurance policy was Cabo San Lucas, Mexico.

There is no dispute Plaintiff was hired to work on the vessel in Mexico.  Therefore, this factor weighs in favor of Mexican law.  However, Defendants provided insurance coverage pursuant to the Jones Act and maritime law and did not pay into the Mexican social security program.  As such, the Court gives this factor minimal weight.  See Lauritzen, 345 U.S. at 588 ("The place of contracting in this instance, as is usual to such contracts, was fortuitous. A seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them.").

**f.  The Inaccessibility of the Foreign Forum**

Defendants argue the fifth factor weighs heavily in support of the application of Mexican law because courts in this judicial district have noted that Mexico has a workmen's compensation-type scheme which provides protection and benefits to injured mariners.  Furthermore, they argue, the accessibility and propriety of the foreign forum is clearly evidenced by Plaintiff's Mexican Labor Court action.

Plaintiff argues Mexico has no *in rem* or *quasi in rem* jurisdiction.  He maintains the Southern District of California is the only place he can sue the vessel as a juristic person. He further argues Defendants should be estopped from claiming the Jones Act and the general maritime law of the United States should not apply to Plaintiff's claims because they failed to provide reasonable notice to assert foreign law as required by Rule 44.1 and waited until after the statute of limitations period for Plaintiff's claims against Nice Try or anyone associated with the vessel to bring the motion for summary judgment.

In reply, Defendants argue they did not delay in providing notice of their intentions to raise issues concerning Mexican law, and the action was not barred by any statute of limitations at the time they gave notice of their intentions.  Without cite to authority, Defendants dispute that Mexico's failure to recognize *in rem* or *quasi in rem* jurisdiction requires application of United States law.  They maintain Mexico is not inaccessible.

While Mexico provides for a workmen's compensation-type scheme, it does not recognize *in rem* or *quasi in rem* jurisdiction as provided in the Southern District. Therefore, this factor weighs in favor of applying United States law.

13

10cv280

**g.  The Law of the Forum**

Defendants argue the law of the forum is not a factor of great weight in choice of law determination.

Plaintiff argues the fact this is an *in rem* and *quasi in rem* admiralty proceeding against a United States flag vessel must be given weight.

Although not entitled to great weight, the law of the forum weighs in favor of United States law.  See Lauritzen, 345 U.S. at 590-91; Pereira, 764 F.2d at 689.

**h.  The Shipowner's Base of Operations**

Defendants maintain the shipowner's base of operations is determined based on the location from which the vessel's day-to-day operations are controlled even in instances where the shipowner is American, and they contend the day-to-day operations of the vessel were carried out and conducted in Mexico.  In further support, they contend the vessel was manned, operated and navigated exclusively by Mexican citizens, and the recreational fishing was done under permits and/or licenses issued by Mexico obtained by the Mexican crew, and the crew was paid in Mexico in Mexican Pesos.

Plaintiff contends the vessel, which has a home port of Coronado, is the sole asset of Nice Try, and the business of Nice Try was the operation and management of the vessel.  He maintains the business was run on a day-to-day basis by managing owner Pfeiffer out of Arizona or in person in Coronado, California or aboard the vessel.  Plaintiff further maintains the legal owner of the vessel and the employer of the crew is an Arizona company based in Phoenix, Arizona, and the equitable owners of Nice Try are United States companies based in Arizona, and the books and records of Nice Try and the vessel were maintained and kept by its accountants in Phoenix.  He also maintains one of the primary purposes of the vessel was to entertain United States citizen clients of the equitable owner.

Plaintiff maintains, at the time of the accident, Pfeiffer was acting as owner in command, and the vessel was on a round trip from Coronado to Alijos Rocks.  Plaintiff also contends the vessel routinely and annually returned to the United States for at least

four months a year during Plaintiff's service on the vessel, the vessel routinely fished with Plaintiff aboard in the territorial waters of California and routinely anchored yards off the California territorial islands of Catalina and Santa Maria. Plaintiff maintains major repairs of the vessel were done in the United States, and, at the time of the accident, the owner/operator was to return the vessel to San Diego permanently. Plaintiff also contends Nice Try intentionally refused to pay money into Mexican Social Security for any crew, and United States insurance was purchased to cover Jones Act injury claims.

The relevant inquiry is the base of operations of the business venture rather than of the corporate owner of the vessel. See Phillips, 632 F.2d at 88. Defendants demonstrate Plaintiff was hired by Hernandez in Mexico and Hernandez was the captain who maintained the vessel and managed the crew. Cadwell Depo. 75:17 - 25, Defs' Exh. M (Doc. No. 99-6). Hernandez was also responsible for paying the mariners' wages from wire transfers made to his bank in Mexico. Hernandez Depo. 30:12 - 25, Defs' Exh. N (Doc. No. 99-6). However, Pfeiffer was the representative of the owner who "managed" Hernandez. Cadwell Depo. 75:11 - 18, Defs' Exh. M (Doc. No. 99-6). Additionally, Pfeiffer was in control of the vessel, and dictated what maintenance and repairs and how and when such repairs would be performed on the vessel. Hernandez Depo. 28:10 - 18, 43:13 - 23, 49:2 - 50:10, Pla's Exh. 6 (Doc. No. 107-5). Pfeiffer also picked the dock slips and hired the crew. Cadwell Depo. 49:23 -25, Pla's Exh. 1 (Doc. No. 107-2). Furthermore, although Hernandez was captain, it was Pfeiffer's decision on where the boat would fish and whether it was safe. Pfeiffer Depo. 75:24 - 77:14, Pla's Exh. 2 (Doc. No. 107-3). The Court finds the base of the ship owner's operations was in the United States.

The bulk of the factors weigh in favor of applying United States law, including the law of the ship's flag which is accorded the most weight. See Bilyk v. Vessel Nair, 754 F.2d 1541, 1543 (9th Cir. 1985). Accordingly, Defendants' motion that seeks dismissal of the action as not cognizable under United States law is DENIED. Defendants' request to apply Mexican law is likewise DENIED.

//

### 2.  Comity and *Res Judicata*

Defendants argue the principle of comity and the doctrine of *res judicata* preclude Plaintiff from relitigating his claims in this action.  Plaintiff filed a complaint in the Mexican Labor Court against Pfeiffer, Cadwell, and the owners of the vessel on September 29, 2008.  Labor Complaint at 2, 3, 5 - 6, Defs' Exh. A (Doc. No. 99-3); Lopez Decl ¶ 1.7(f) (Doc. No. 99-6).  On January 7, 2009, Plaintiff dismissed his claims against the vessel and her owners.  See Hearing for Claims and Exceptions at 97; Defs' Exh. A (Doc. No. 99-3); Lopez Decl. ¶ 1.7(g) (Doc. No. 99-6).  The court issued a default judgment against Pfeiffer and Cadwell in favor of Plaintiff on all Plaintiff's claims See Record of Deliberation and Voting at 111; Defs. Exh. A (Doc. No. 99-3); Lopez Decl. ¶ 1.7(h) (Doc. No. 99-6).  Defendants maintain each of Plaintiff's claims in the instant action stems from events occurring on the vessel or in Mexico in September 2008, and Plaintiff's employment, injury and termination which were addressed in the Mexican Labor Court action.

### a.  Comity

Defendants contend the Mexican Labor Court judgment is entitled to recognition and enforcement under the principle of comity.   Comity is the recognition a nation supplies to the legislative, executive or judicial actions of another nation,  See In re Simon, 153 F.3d 991, 998 (9th Cir. 1998) (citing Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)).

Defendants argue the Mexican judgment is entitled to recognition under the principle of comity because foreign judgments are generally entitled to recognition in U.S. admiralty cases, and none of the circumstances that would serve as a basis for denying recognition is present here.  They further argue Plaintiff chose to proceed against Defendants in Mexico under Mexican law, it is only equitable and just that he should be bound by the judgment he sought and obtained.

Plaintiff does not specifically address comity.  Defendant argues Plaintiff does not contest, and thus concedes, that comity requires the recognition of the Mexican Labor

1   Court Judgment.

2   **b.** *Res Judicata*

3         Defendants argue that not only is the Mexican judgment entitled to recognition,

4   but it also bars Plaintiff's claim pursuant to the doctrine of *res judicata*.  *Res judicata*, or

5   claim preclusion, prohibits the relitigation of any claims that were raised or could have

6   been raised in a prior action.  Western Radio Services Company, Inc. v. Glickman, 123

7   F.3d 1189, 1192 (9th Cir. 1997).

8         In their motion, Defendants analyze the preclusive effect of the Mexican Labor

9   Court judgment under United States law.  In opposition, Plaintiff argues *res judicata* law

10  of Mexico determines the preclusive effect of any labor court judgments in this case not

11  United States law.  Relying on the Restatement (Second) of Conflict of Laws section 98,

12  Plaintiff maintains a valid foreign judgment is treated like a sister state judgment for

13  purposes of determining what *res judicata*, claim or issue preclusion rules will apply in a

14  particular case, and contends the Court must look to Mexican law according to section 94,

15  95, 98 of the Restatement (Second) of Conflicts.  Plaintiff also argues even under the *res*

16  *judicata* rules that apply to district court judgments, *res judicata* would not bar Plaintiff's

17  claims.

18        While Defendants argue Plaintiff's reliance on Restatement (Second) Conflict of

19  Laws sections 94 and 95 which discuss the preclusive effect of sister state judgments is

20  improper, Defendants contend courts normally apply foreign law to determine the effect

21  of foreign state judgments.  During the hearing, Defendants maintained determining *res*

22  *judicata* with foreign law is unsettled and the Court has discretion to apply foreign or

23  United States law.  The Court finds, as discussed below, the Labor Court judgment has no

24  preclusive effect whether analyzed under Mexican law or United States law.

25  **i.  Mexican Law**

26        Plaintiff argues under the Mexican *res judicata* rule, the judgment obtained by

27  Plaintiff in the Labor Court could in no way be *res judicata* for either claim preclusion

28  purposes or issue preclusion purposes.  Plaintiff maintains under Mexican law, for a

judgment to preclude a claim in a subsequent action, the judgment must satisfy the following test:

> (A) The first judgment must be final and not subject to attack by the party asserting claim preclusion in the second suit;
>
> (B) The identity of the parties must be exactly the same in the first judgment and the second suit;
>
> (C) The benefits claimed in the first and second suits must be identical;
>
> (D) The causes of action or claims alleged in the first suit must be identical to the causes of action or claims alleged in the second suit; and;
>
> (E) The merits of the first suit must have been analyzed and ruled upon.

Maldonado Decl. §12, 13 (Doc. No. 109); Lopez Supp. Decl. § 7.1 (Doc. No. 114-2).

In their reply, Defendants argue, under Mexican law, there are two competing tests regarding the preclusive effect of the Mexican Labor Court judgment, a general test, as presented by Plaintiff, and a labor-specific test. During oral argument, Plaintiff contended the labor-specific test does not exist under Mexican law, and Defendants admitted that the test is an "isolated thesis" but maintains it has persuasive value.

Plaintiff provides case law supporting the general test as the proper test under Mexican law. <u>See</u> Maldonado Decl. §§ 17 - 19 (Doc. No. 109). As such, the Court will analyze the preclusive effect of the Labor Court judgment under the general test only.

**A.  Final Judgment**

Plaintiff maintains Nice Try and the vessel were never served or named in the Labor Court suit and, the judgment makes no reference to either. He argues the judgment is not final as to Nice Try because Nice Try would have a right to appeal the judgment and set it aside. He further argues, under Mexican law, the lack of final judgment against Nice Try or the vessel would prevent Plaintiff from enforcing the judgment against them and would prevent Nice Try and the vessel from using the judgment against Plaintiff as a defense. Maldonado Decl. ¶¶ 24, 31, 32, 35 (Doc. No. 109).

Defendants argue the parties agree the judgment is final and that Pfeiffer and

Cadwell were parties to the judgment.

It is undisputed that Nice Try is not named in the Labor Court judgment. Additionally, the judgment is final as to the named defendants Pfeiffer and Cadwell. Nice Try's ability to challenge any attempt by Plaintiff to enforce the judgment against Nice Try does not effect the final nature of the action. The Court finds the action is final.

**B. Identity of Parties**

Plaintiff maintains the parties must be identical in both suits and they are not. Plaintiff's expert maintains Mexican Courts strictly construe the requirements of *res judiciata*, and "identical mean identical" under Mexican law. Maldonado Decl. ¶ 13 (Doc. No. 109). Plaintiff contends the judgment arising out of the Labor Action was only as to Cadwell and Pfeiffer as individuals and no judgments were rendered against Nice Try or its predecessor, On The Edge LLC. He further contends no judgment was rendered against the vessel nor could a judgment be rendered against the vessel because Mexico does not recognize *in rem* personal claims against a vessel as a juristic person. Plaintiff argues the lack of literal identity of parties prevents Nice Try or the vessel from using the Labor Court Judgment as a defense in this action.

In reply, Defendants argue this factor should be determined under the labor-specific test under which the judgment binds anyone who benefitted from the labor relationship. As discussed above, the Court finds the general test is the proper test for determining the *res judicata* effect of the judgment. Clearly, the two actions do not include identical parties.

**C. Benefits Claimed; Causes of Action; and Ruling on the Merits**

The judgment also fails to meet the remaining requirements of the general test. Neither the benefits sought nor the causes of action or claims are identical. The current action seeks personal injury and claims under the Jones Act which were not asserted in the Labor Court case. Additionally, Plaintiff obtained a default judgment in the Labor Court action which is not a ruling on the merits.

In sum, the prior foreign judgment cannot bar the current action.

**ii.  United States Law**

Under United States law, *res judicata* bars a claim when there is "(A) an identity of claims; (B) a final judgment on the merits; and (C) identity or privity between the parties." Proshipline Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010) (citing Stewart v. U.S.Bancorp, 297 F.3d 953, 956 (9th Cir. 2001)).

To determine whether there is an identity of claims, courts examine the following factors:

> (1) whether the suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

ProShiplLine Inc., 609 F.3d at 968 (citing Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005).

Defendants argue the current action and the Mexican Labor Court action arise out of the same transactional nucleus of facts.  Specifically, they argue Plaintiff alleged the same facts in the Mexican Labor Court case that he alleges in the instant case, namely, that he was employed by Pfeiffer, Cadwell, and/or the owners of the vessel to work on board the vessel, he injured his foot on board the vessel while it was at sea in September 2008, by stepping on a piece of metal, he was terminated shortly after returning to port, he did not receive certain wages and benefits while employed or in conjunction with his termination and injury, and the injury ultimately resulted in the amputation of a toe. They further argue the witnesses, testimony, documents and other evidence required to establish the facts are largely the same.  Defendants contend an identity of claims exists between this action and the Mexican Labor Court action, and, therefore, Plaintiff's claims in this action are barred by *res judicata*.

In opposition, Plaintiff maintains he attached and arrested the vessel in the instant case pursuant to Supp. Admiralty Rules B and C providing the Court *quasi in rem* jurisdiction and *in rem* jurisdiction over the vessel, as a separate party.  Plaintiff further maintains Mexican law and the Labor Courts do not recognize *quasi in rem* or *in rem* jurisdiction as it exists under United States admiralty and maritime law, and at no time

during the Labor Court action did he obtain or could he have obtained *quasi in rem* jurisdiction over Defendants by attaching the vessel in Mexico or *in rem* jurisdiction over the vessel as a party.  Plaintiff argues without the ability to bring *quasi in rem* or *in rem* claims in both courts, there is no possibility of *res judicata* in the second case.

The Court finds the holding in <u>ProShipLine Inc.</u> instructive.  There, the Ninth Circuit determined an identity of claims did not exist because, although both cases involved similar facts, the second action included a maritime attachment claim and the claim could not have been tried in the first action because the court "was completely unable to entertain a claim seeking admiralty attachment of property on board a vessel" located outside the district.  609 F.3d at 968.  A similar circumstance exists in the action before this Court.  Plaintiff could not bring an *in rem* and *quasi in rem* action in the Mexican Labor Court.  As such, the two actions do not arise from the same transactional nucleus of facts.  As noted by Defendant, this factor is outcome determinative.  <u>See</u> <u>Id</u>.  Accordingly, there is no identity of parties to support *res judicata* under and the Labor Court action has no preclusive effect under United States law, and Defendants are not entitled to judgment.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.    Plaintiff's motion to strike (Doc. No. 111) is **DENIED**;

2.    Defendants' objection to Plaintiff's surreply is **OVERRULED**;

3.    Defendants' objection to Plaintiff's reply in support of his motion to strike is **OVERRULED**;

4.    Defendants' evidentiary objections are **OVERRULED as moot**; and

5.    Defendants' motion for summary judgment, or in the alternative, partial summary judgment (Doc. No. 99) is **DENIED**;

DATED:  September 16, 2013

JOHN A. HOUSTON
United States District Judge

10cv280